IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

ROBERT C. FRANKOWIAK, et al., )
)
Plaintiff, )
) CASE NO. _____
v. ) 2:12cv295-FtM-29DNF
)
GINN DEVELOPMENT COMPANY, )
LLC, et al. )

**GINN DEVELOPMENT COMPANY, LLC AND
GINN TITLE SERVICES, LLC'S NOTICE OF REMOVAL**

Defendants Ginn Development Company, LLC ("GDC") and Ginn Title Services, LLC ("GTS") (collectively, the "Ginn Defendants"), hereby remove the above-captioned action from the Circuit Court in and for Collier County, Florida, to the United States District Court for the Middle District of Florida, Ft. Myers Division, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d), stating as follows:

**I.      Preliminary Statement**

1.      There are two independent grounds for removal of this action.

2.      First, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because the operative complaint—Plaintiffs' First Amended Class Action Complaint and Demand for Jury Trial ("FAC")—contains a claim for relief under the federal RICO statute, 18 U.S.C. § 1962(d). See 28 U.S.C. § 1331. Because Plaintiffs' RICO claim arises under federal law, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3.      Second, the Ginn Defendants have a statutory right to have this putative

- 1 -

6807468 v05

class action adjudicated in federal court based on diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Minimal diversity of citizenship exists in this matter because, for example, Plaintiffs and Defendants Wachovia Bank, N.A. ("Wachovia") and Bank of America, N.A. ("BOA") are citizens of different states. Specifically, Plaintiffs are citizens of Florida, Illinois, Indiana and Ireland, Defendant Wachovia is a citizen of South Dakota, and Defendant BOA is a citizen of North Carolina. Plaintiffs allege that the putative class consists of more than 100 members. Further, based upon Plaintiffs' allegations, the amount in controversy exceeds $5,000,000. Accordingly, federal jurisdiction is proper under 28 U.S.C. §§ 1332(d)(2) and (d)(6).

## II. Removal is Proper Because This Court Has Federal Question Jurisdiction.

4. The Ginn Defendants may remove this action to federal court because this Court has original jurisdiction of this action under 28 U.S.C. § 1331. See 28 U.S.C. § 1441. 28 U.S.C. § 1331 provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

5. The federal removal statute provides that "any civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Further, "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

28 U.S.C. § 1441(b).

6. Here, Plaintiffs have asserted a claim under United States law. Specifically, in Count IX of the FAC, Plaintiffs assert a claim under the federal RICO statute, 18 U.S.C. § 1962(d).[1] See FAC ¶¶ 180-86. Therefore, this action is properly removable on federal question grounds.

7. In addition, Plaintiffs' remaining state law claims—violation of Florida's version of RICO, civil conspiracy, and negligent supervision—are subject to supplemental jurisdiction because they arise from the same case or controversy as the federal RICO claim. See U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Specifically, Plaintiffs' remaining state law claims involve overlapping, if not identical, facts, occurrences, witnesses and evidence as their federal RICO claim. Indeed, Plaintiffs have acknowledged the interrelated nature of their federal RICO claim and their state law claims by incorporating by reference the same factual allegations into their state law claims as are alleged in support of their federal RICO claim. See FAC ¶¶ 72, 117, 124, 132, 141, 151, 160, 170, 180. And the federal RICO claim and the state law claims have overlapping elements, such as proof of a conspiracy and acts in furtherance of the conspiracy. For these reasons, supplemental jurisdiction exists over Plaintiffs' remaining state law claims and removal is proper. See, e.g.,

---

[1] Plaintiffs also allege that the Defendants have violated the federal mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) statutes. FAC ¶ 110.

D.H.G. Properties, LLC v. The Ginn Cos., No. 3:09-cv-735-J-34JRK, 2010 WL 5584464, at *5 n.6 (M.D. Fla. Sept. 28, 2010) (noting that the court had supplemental jurisdiction over several state law claims, including negligent supervision, that were asserted against various Ginn entities and SunTrust Mortgage, Inc. in addition to a federal RICO claim).

### III. Removal is Also Proper Because This Court Has Subject-Matter Jurisdiction Under the Class Action Fairness Act.

8. Under CAFA, federal diversity jurisdiction over class actions exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant" and in which the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2)(A); (d)(6).

#### A. This Lawsuit Meets CAFA's Definition of "Class Action."

9. An action satisfies CAFA's definition of a "class action" if it was "filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute . . . authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

10. Here, this action qualifies as a putative "class action" under CAFA because it was brought as a class action pursuant to Florida's class action rule, Rule 1.220 of the Florida Rules of Civil Procedure. See FAC ¶ 187.

#### B. Minimal Diversity of Citizenship is Satisfied.

11. Plaintiffs are citizens of Florida, Illinois, Indiana, and Ireland. See id. ¶¶ 3, 5-8.

12. Defendants Wachovia and BOA are national banking associations.

13. Under federal law, national banking associations are "deemed citizens of the States in which they are . . . located." 28 U.S.C. § 1348. In 2006, the U.S. Supreme Court interpreted § 1348 to mean that—for diversity of citizenship purposes—a national banking association "is a citizen of the State in which its main office, as set forth in its articles of association, is located." Wachovia Bank v. Schmidt, 126 S. Ct. 941, 945 (2006).

14. Wells Fargo Bank, N.A. is the successor to Wachovia. Wells Fargo Bank, N.A.'s articles of association state that its "main office" is located in Sioux Falls, South Dakota. See Articles of Association of Wells Fargo Bank, National Association, attached as **Exhibit "A."**

15. Likewise, BOA's articles of association state that its "main office" is located in Charlotte, North Carolina. See Amended and Restated Articles of Association of Bank of America, National Association, attached as **Exhibit "B."**

16. Thus, Wachovia is a citizen of South Dakota and BOA is a citizen of North Carolina for purposes of determining diversity. See 28 U.S.C. § 1348; Schmidt, 126 S. Ct. at 945.

17. Because the citizenship of at least one proposed class member and one defendant is diverse, CAFA's minimal diversity requirement is satisfied. See 28 U.S.C. § 1332(d)(2).

C.  **The Putative Class Contains Over 100 Members.**

18. In the FAC, Plaintiffs purport to bring this class action on behalf of all persons or entities that purchased property in twelve "Ginn-Lubert Adler developments."[2] FAC ¶ 187.

19. Plaintiffs further allege that, "[a]lthough the exact number of class members is not yet known, **thousands** of persons or entities have purchased property in the Ginn communities." Id. ¶ 189 (emphasis added). Accordingly, Plaintiffs allege that there are "likely thousands of members of the Class." Id.

20. Based on these allegations, the aggregate number of putative class members is greater than 100 for purposes of 28 U.S.C. § 1332(d)(5)(B).

D.  **CAFA's Amount in Controversy Requirement is Satisfied.**

21. 28 U.S.C. § 1332(d)(2) provides that district courts shall have original jurisdiction over any putative class action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs . . . ."

22. To determine whether this $5 million amount is met in class actions, "the claims of the individual class members shall be aggregated . . . ." See 28 U.S.C. § 1332(d)(6).

23. In a case such as this, where the complaint fails to specify the amount of damages sought, the defendants need only show "by a preponderance of the evidence that

---

[2] Specifically, the following residential real estate developments are at issue: (1) Quail West in Naples, Florida; (2) Hammock Beach in Palm Coast, Florida; (3) Tesoro in Port St. Lucie, Florida; (4) Tesoro Preserve in Port St. Lucie, Florida; (5) Reunion Resort in Orlando, Florida; (6) Bella Collina in Montverde, Florida; (7) Yacht Harbor Village at Hammock Beach in Palm Coast, Florida; (8) Conservatory at Hammock Beach in Palm Coast, Florida; (9) Cobblestone Park in Blythewood, South Carolina; (10) The BriarRose in Hancock County, Georgia; (11) Laurelmor in North Carolina; and (12) Sur Mer in the Bahamas. See FAC ¶ 187.

the amount in controversy more likely than not exceeds the jurisdictional requirement." Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010). Moreover, a "district court need not 'suspend reality or shelve common sense in determining whether the face of a complaint, or other document establishes the jurisdictional amount.'" Id. at 1062.

24. Here, while Plaintiffs' claims lack merit and they are entitled to no damages, taking the allegations of the FAC as true for purposes of removal only, the alleged aggregate value of the purported class claims clearly exceeds $5,000,000.

25. Specifically, Plaintiffs allege that they (and the putative class) were victims of a complex scheme by the Defendants to sell real property and club memberships at "prices that were fraudulently inflated." FAC at 2. Plaintiffs further claim that they were duped into purchasing properties in the Ginn communities "for much more than they were worth," and as a result, they "have suffered significant injury to their property and/or business **including** but not limited to **the deposits and payments Plaintiffs and Class members paid for the property** and closing costs and other costs and fees and because they entered into loan obligations that they would not have had if they had known the truth." Id. at 3; ¶¶ 105-06 (emphasis added). Plaintiffs further allege that they "were also injured because the propert[ies] they purchased were significantly less valuable than represented by Defendants at the time of purchase and have become even less valuable as a result of Defendants' conduct." Id. ¶ 105.

26. As an initial matter, Plaintiffs' allegations indicate that the amount in controversy is in the hundreds of millions of dollars (if not in the billions). For example,

the FAC states that total sales during the launch of the Conservatory at Hammock Beach—one of the twelve real estate developments at issue in this lawsuit—exceeded $144 million. Id. ¶¶ 6, 187, 194. Indeed, according to the FAC, the total sales volume in all of the Ginn developments at issue was allegedly "in excess of **two billion dollars**."[3] Id. ¶ 194 (emphasis added). This Court need not look further than these allegations to determine that the amount in controversy exceeds $5 million.

27. Even if the FAC did not reference the total sales volume in the Ginn developments, the amount in controversy requirement can be satisfied simply by aggregating the claims of the named Plaintiffs. Indeed, based on their allegations, the named Plaintiffs' claims exceed $10 million. See id. ¶ 3 (Plaintiff Frankowiak has "sustained a current loss to date of over $400,000 . . . ."); ¶ 4 (Plaintiff Schwartz purchased over $3 million of property and club memberships in Bella Collina and also a lot in Quail West); ¶ 5 (Plaintiff Grant purchased $6 million worth of property and homes in Bella Collina); ¶ 6 (Plaintiff Ehman purchased a $349,000 lot in the Conservatory); ¶ 7 (Plaintiff De Cespedes purchased a $589,000 lot in Laurelmor that he claims is now "worthless"); ¶ 8 (Plaintiff Thompson purchased a lot in Quail West at a "fraudulently inflated" price along with a $175,000 golf membership).

28. In addition, it can be inferred from the numerous examples of allegedly overpriced property sales in the FAC that more than $5 million is at issue. As discussed above, the putative class claims damages based on the purchase prices of their properties. Based on the examples included in the FAC, the sales prices for each of these

---

[3] Plaintiffs also allege, "Defendants represented that in 2004, Ginn and its partners sold over $1.2 billion dollars in home sites, homes and condominiums." FAC ¶ 6.

transactions range from several hundred thousand dollars to over $5 million dollars per property. See, e.g., id. ¶ 51(a) (alleging that certain Ginn entities sold two lots for a total price of $964,800, but recorded each lot as being sold for $964,800, to manipulate appraised values by creating higher prices for comparable lots); ¶ 53 (alleging that Lot 194 in Bella Collina West sold for $650,900); ¶ 55(b) (alleging that Lot 390 in Bella Collina sold for $5.349 million). Accordingly, based on these representative examples, it is clear that the damages sought by each class member will be significant, ranging from tens of thousands of dollars to several million dollars per class member.[4]

29. And, as noted above, Plaintiffs allege that the putative class will likely include "thousands of members" because "thousands" purchased properties in the Ginn developments. Id. ¶ 189. Given these allegations, 1,000 members is a conservative estimate for the class. Assuming *arguendo* that there are 1,000 class members, each member would only need to seek $5,000.01 in damages to reach CAFA's jurisdictional minimum (1000 x $5,000.01 = $5,000,010). See, e.g., Colomar v. Mercy Hosp., No. 05-22409-CIV, 2007 WL 2083562, at *2 n.1 (S.D. Fla. July 20, 2007) (finding that, based on the plaintiff's allegations that "thousands" of persons would make up the proposed class, and that each person's damages "were reasonably construed to amount to thousands of dollars," it was "more than reasonable to conclude that the prerequisites for CAFA jurisdiction were met on the face of the pleadings."). Given that Plaintiffs' claims involve purchases of real property in "residential resort communities," is it reasonable to assume that each class members' purported claim will exceed $5,000, particularly

---

[4] Based on these allegations, it is highly likely that the Court would only need to aggregate the claims of a few members of the putative class to reach CAFA's $5 million threshold.

considering the alleged value of the named Plaintiffs' purported claims and the purchase prices referenced above and throughout the FAC.

30. Furthermore, Plaintiffs seek treble damages, which are considered by the Court in determining whether the jurisdictional minimum is met. See Jackson v. The Purdue Pharma Co., No. 6:02-CV-1428ORL19KRS, 2003 WL 21356783, at *2 (M.D. Fla. Apr. 11, 2003) (holding that treble damages must be considered in determining the amount in controversy); Rosen v. Chrysler Corp., 205 F.3d 918, 922 (6th Cir. 2000) (including treble damages in determining that the amount in controversy was met). Accordingly, continuing with the conservative 1,000 member class estimate discussed above, each class member would only need to seek $1,666.67 to meet the jurisdictional requirement (1000 x $1,666.67 x 3 = $5,000,010). As explained above, based on the alleged purchase prices for the properties in the Ginn developments, it is highly likely that each class member will seek well in excess of $1,667 as compensatory damages. Consequently, it is likely (if not certain) that the amount in controversy is well above $5 million.

31. Finally, Plaintiffs also seek attorneys' fees. FAC at p. 84. Attorneys' fees should be included in connection with determining the amount in controversy. Mirras v. Time Ins. Co., 578 F. Supp. 2d 1351, 1352 (M.D. Fla. 2008) (holding that attorneys' fees may be considered in determining the amount in controversy). The fact that Plaintiffs included a claim for attorneys' fees further supports the conclusion that the amount in controversy exceeds $5 million.

32.     In sum, given the nature and value of Plaintiffs' claims and the purchase prices of the properties at issue, coupled with the fact that Plaintiffs seek treble damages and attorneys' fees, it is clear that, both at the time the FAC was filed and at the time of removal, the amount in controversy exceeds $5 million.

## IV. The Ginn Defendants Have Satisfied The Procedural Requirements For Removal.

33.     On or about March 12, 2012, Plaintiff Sylvia Thompson filed this putative class action styled Sylvia Thompson v. Ginn Development Company, LLC et al., Docket No. 12-CA-931, in the Circuit Court in and for Collier County, Florida (the "State Court Action").

34.     Plaintiff Thompson did not serve the Ginn Defendants with the original complaint.

35.     Plaintiffs filed the FAC on April 2, 2012.

36.     Defendant GTS was served with the FAC on April 24, 2012.[5]

37.     Therefore, the Ginn Defendants have timely filed this Notice of Removal pursuant to 28 U.S.C. § 1446(b) because it was filed within thirty (30) days after service of the FAC. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-349 (1999) (clarifying that the time for removal is triggered by formal service).

38.     Venue lies in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1441(a) because this District embraces the place where the State Court Action was originally pending (Collier County, Florida).

39.     Pursuant to 28 U.S.C. § 1446(a) and Middle District of Florida Local Rule

---

[5] Defendant GDC has not yet been served with the FAC.

4.02(b), true and legible copies of all process, pleadings, orders, and other papers or exhibits of every kind on file in the State Court Action as of the date of filing this notice are attached hereto as **Exhibit "C."**

40. On even date, written Notice of the filing of this Notice of Removal was timely served on Plaintiffs' counsel, and a copy of this Notice of Removal was filed with the Clerk of the Circuit Court of the Twentieth Judicial Circuit, in and for Collier County, Florida, in compliance with 28 U.S.C. § 1446(d).

41. Accompanying this Notice of Removal are a Civil Cover Sheet and a check in the amount of $350.00 for the required filing fee.

42. For purposes of removal founded upon federal question jurisdiction, all Defendants who have been served to date consent to removal of this action. <u>Bailey v. Janssen Pharmaceutica, Inc.</u>, 536 F.3d 1202, 1208 (11th Cir. 2008) ("[A] defendant has no obligation to participate in any removal procedure prior to his receipt of formal service of judicial process."); <u>see</u> Consents to Removal executed by all Defendants, attached as **Exhibit "D."**

43. Pursuant to 28 U.S.C. § 1453, the consent of all Defendants is not required for purposes of removal under CAFA.

V. **Conclusion**

44. While the Ginn Defendants believe that class certification is not appropriate in this action, and further believe that they will prevail on the merits of Plaintiffs' claims, removal is proper because this Court has federal question jurisdiction over Plaintiffs' federal RICO claim.

45. Alternatively, removal is proper under CAFA because the allegations in the FAC demonstrate that minimal diversity exists, that the putative class consists of more than 100 members, and that the amount in controversy in this case, including, without limitation, the alleged compensatory and treble damages, as well as the request for attorneys' fees, exceeds CAFA's jurisdictional threshold of $5 million.

46. The Ginn Defendants hereby reserve their right to assert any and all defenses to the FAC and any motion for class certification filed by Plaintiffs. The Ginn Defendants further reserve the right to amend and/or supplement this Notice of Removal.

WHEREFORE, the Ginn Defendants remove this action from the Circuit Court in and for Collier County, Florida, to the United States District Court for the Middle District of Florida.

[*signature page to follow*]

Respectfully submitted, this 24th day of May, 2012.

*[signature]*

Andrew H. Reiss
Florida Bar. No. 116955
Cheffy Passidomo, P.A.
821 5th Avenue South
Naples, Florida 34102
ahreiss@napleslaw.com
Telephone: (239) 261-9300
Fax: (239) 261-9782

**Of Counsel**

**MORRIS, MANNING & MARTIN, LLP**

Robert P. Alpert
Georgia Bar No. 464550
W. Marion Wilson
Georgia Bar No. 152950

*Motions for pro hac vice forthcoming*

1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
ralpert@mmmlaw.com
wwilson@mmmlaw.com
Telephone: (404) 233-7000
Fax: (404) 365-9532

*Attorneys for Ginn Development Company, LLC and Ginn Title Services, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following parties by U.S. Mail on this 24th day of May, 2012.

| | |
|---|---|
| Kenneth G. Gilman, Esq.<br>GILMAN LAW LLP<br>Beachway Prof. Center Tower<br>3301 Bonita Beach Road, Suite 307<br>Bonita Springs, Florida 34134<br><br>*Attorneys for Plaintiffs* | Geoffrey Kahn, Esq.<br>Stephen Kastenberg, Esq.<br>Ballard, Spahr, Andrews & Ingersoll, LLP<br>1735 Market St., 51st Floor<br>Philadelphia, PA 19103-7599<br><br>*Attorneys for Defendant Lubert-Adler Partners, L.P.* |
| Michael G. Tanner, Esq.<br>Helen A. Peacock, Esq.<br>Tanner Bishop<br>1 Independent Drive, Suite 1700<br>Jacksonville, FL 32202<br><br>*Attorneys for Defendant Lubert-Adler Partners, L.P.* | Marc J. Gottlieb, Esq.<br>Ashley A. Sawyer, Esq.<br>Akerman Senterfitt<br>Las Olas Centre II, Suite 1600<br>350 East Las Olas Boulevard<br>Fort Lauderdale, FL 33301-2999<br><br>*Attorneys for Defendant SunTrust Mortgage, Inc.* |
| J. Randolp Liebler<br>Liebler, Gonzalez & Portuondo, P.A.<br>Courthouse Tower - 25th Floor<br>44 West Flagler Street<br>Miami, FL 33130<br><br>*Attorneys for Defendants Bank of America, N.A., Bank of America Settlement Services, and LandSafe Services, LLC f/k/a HomeFocus Services, LLC* | Robert A. Muckenfuss<br>Lia A. Lesner<br>Matt Pearson<br>McGuire Woods<br>201 North Tryon Street<br>Charlotte, NC 28202-2146<br><br>*Attorneys for Defendants Bank of America, N.A., Bank of America Settlement Services, and LandSafe Services, LLC f/k/a HomeFocus Services, LLC* |

| | |
|---|---|
| David Greene<br>Fox Rothschild LLP<br>222 Lakeview Avenue<br>Suite 700<br>West Palm Beach, FL 33401<br><br>*Attorneys for Defendants Wells Fargo Bank N.A., as successor to Wachovia Bank, N.A. and Wells Fargo & Co. as successor to Wachovia Corporation* | Jeremy D. Feinstein<br>Mary Hackett<br>Reed Smith, LLP<br>Reed Smith Centre<br>225 Fifth Avenue<br>Pittsburgh, PA 15222<br><br>*Attorneys for Defendants Wells Fargo Bank N.A., as successor to Wachovia Bank, N.A. and Wells Fargo & Co. as successor to Wachovia Corporation* |
| Aaron S. Weiss<br>Carlton Fields<br>Miami Tower<br>100 S.E. Second Street<br>Suite 4200<br>Miami, Florida 33131-2113<br><br>*Attorneys for Fifth Third Bank (Michigan) and Fifth Third Bancorp.* | |

                                                    Andrew H. Reiss

11084-0001-21